May it please the Court, Mark Krasnowski from the Office of the Federal Public Defender for Appellant Anthony Trotter. The State Court record here strongly suggests that Trotter and his lawyer were absent when the Court gave a response to the jury question about the legal definition of intent to kill, and that counsel was not given prior notice of the question or a chance to object to the response. The Court should either grant relief on that basis or remand for an evidentiary hearing to allow the Court below to take more facts on whether counsel was present. Trotter argued in the State Court and below that the record did not show that counsel had an opportunity to object to the response. Now, my recollection in the State Court, this practice was pretty common, which was that once the case was submitted to the jury, the Court would obtain a stipulation from counsel that he could respond to any questions coming from the jury, and the counsel would generally waive any appearance. Is that what happened here? Well, that's right. There was, the record does show a usual policy similar to what you're saying, and here Mr. Trotter did waive his right to be present when the Court addressed a jury question, but that was contingent on the rest of the deal, which is that the Court is going to contact counsel over the phone, let them know there's a question, and then they decide whether they'd be present and they have an opportunity to respond. There were three sets of jury questions here. And when you look at all three of them, we're in the second set, and it's striking what's absent there when you look at the other two. At the first set of jury questions, the trial court states on the record that counsel was contacted by phone and that both waived their presence. The judge then responded to the jury question. The second set of jury questions is the one at issue here about legal intent to kill. There, there's no indication, the Court makes no record in the RT, the reporter's transcript, that counsel has been contacted or there's been any waivers of presence. He just states the question from the jury and launches into his response. Now, the third set of jury questions shortly after that is drastically different, and there the Court states on the record that counsel and the defendant are there, and he asks defense counsel if he has any objection to his proposed response. So the question we're concerned about, we don't have that showing in the record that counsel was contacted at all and there was a waiver. So I think on this record, there should be a grave concern that he had counsel at all during this critical stage of the proceeding. Now, Mr. Trotter did submit this argument, noting the possibility that counsel was not, had an opportunity to object, in his petition for review in the California Supreme Court, and then he attached that portion of the petition for review in his traverse in the court below. Unfortunately, 16 days after he filed his traverse, the magistrate judge denied his petition. So unfortunately, I did not put the traverse in my excerpts of record, and I apologize for that, but the traverse is at docket number 42 in the district court record, and he did attach part of the petition for review there. So what was wrong with the Court's response? Well, the Court's response is misleading here, because when the Court says that there's no legal definition of intent to kill and that the jurors should just use their common understanding of the meaning, in fact, in the context of this case, there is a very definite legal definition. And what that definition is, is that to decide the element of intent to kill, the instruction was the jury should consider evidence of voluntary intoxication. That's not definitional. The point is California has said over and over there's no definition for intent to kill. You don't have to give an additional definition. That's what California said. Right? Right. So the jury says, give us a definition of intent to kill, and the judge says, you got the instructions. Go look at them. It seems to me that's what the Court would do. That doesn't say to the jury, and by the way, don't consider anything else I told you in the instructions, does it? The jury has been told you must consider every instruction. Consider them all together. The jury didn't say we're confused about how intoxication plays into intent to kill. They just said, can you give us a further definition of intent to kill? The Court said no. What's wrong with that? Well, the Court here, in fact ---- By the way, California didn't think there was anything wrong with that. True? Excuse me? The California Court of Appeals didn't think there was anything wrong with that. No, no. The State court did not. That is correct. Nor did the district court. No, the magistrate judge did not either. That's right. So under California law, that was ---- that seemed to be all right. So your argument has to be as a matter of constitutional law, the judge had to say, and by the way, here are the rest of the instructions that might affect intent to kill. Correct? Is that your position? No. I'm not saying that we have to give a laundry list of all possible instructions that would aid defense. What I'm saying is that here ---- I didn't say it would aid defense. I said it would affect intent to kill. I understand. I'm sorry that I rephrased your question. Well, I just want to make sure that we're on the same page. No, we are. My point is this. The CALJIC here, 4.21, says that to assess whether the defendant has specific intent to kill, which is a heightened standard in California, the jury should consider evidence of intoxication. Here, the judge did not say ---- did not reference, did not cite for the jury any instructions or say go reread the instructions. It said there is no additional definition. No, he said more than that. He said just apply the plain English meaning of the words that are used. Is that what he said to the jury? He did say that. Okay. Anybody that understands the English language would apply the use of the English language to the standard. That's it. In the context of this case, it's misleading, though, because the common everyday understanding would very likely not include that evidence of voluntary intoxication could negate that intent. So that, in fact, the defendant ---- The jury didn't make any inquiry about intoxication. And was there an instruction given about intoxication? Yes, there was. Okay. But the instruction couples the two together. They're inextricably linked, the specific intent and voluntary intoxication. And the danger here is that the trial judge, by not mentioning involuntary intoxication again, decoupled those, and that the jury was reasonably likely not to consider the intoxication. Wasn't the whole trial about intent and intoxication? Wasn't that what the whole ---- this was just on the special circumstances issue. It was on the special circumstances. That's all the case was about when we went to trial the second time. The case was to prove up the special circumstances, and certainly part of that was whether he had specific intent to kill and ---- What was the only ---- what was the issue? It was the ---- What did the prosecution have to establish to show special circumstances? The prosecution put on evidence of the crime to argue that based on this crime, you should conclude he had the specific intent to kill, and the defense presented voluntary intoxication. And that was what the case was all about, right? That's correct. And the underlying instructions, and there was no claim that the underlying instructions were incorrect. Is that right? Or constitutionally deficient? That is true. And the jury didn't ask about specific intent to kill. You keep slipping that in. That's nice. But according, at least to the transcript, according to the transcript, what the jury said is, what is the definition of intent to kill? And the judge says, none. Go back and look at your instructions. They go back and look and say, okay, now we know what intent to kill is. It says specific intent to kill, and we have to consider intoxication. Is that right? What I'm looking for is I don't believe the judge said go back and look at the instructions. The judge just said there's no extra meaning of intent to kill. So in that respect, they did not. He says there's no mystery about it. I don't want to be confusing you. There's no further definition. They asked for a more definition. He said intent to kill means just what those words indicate. So apply your understanding to them. All I have to do is the inclination. That's what he says. There is nothing further than what I told you in my instructions. That's what that implies, I should think, unless the jury is terribly obtuse and is coming up with this magic thing, not out of the instructions, but from somewhere else. Well, it is interesting that one thing to drop out is they're not asking about specific intent to kill. They're asking about intent to kill. But aside from that, now, in the context of this case, it is misleading, though, not to point them back to voluntary intoxication, because they have to look at that evidence to assess whether there's intent to kill. Do you want to save some time for rebuttal? I would very much like that. Thank you, Your Honor. I'll save the remainder of my time. Thank you. May it please the Court, California Deputy Attorney General David Vogt, Respondent, and Appellee, the Warden. The judgment of the District Court in this case should be affirmed, because Appellant has failed to establish he's entitled to relief under the Anti-Terrorism and Ineffective Death Penalty Act. Appellant has failed to show that his trial counsel rendered ineffective assistance under both prongs of the Strickland test. Trial counsel's representation was professionally competent, because his decision was reasonable and presumably part of a sound trial strategy as well. Which decision are you talking about? The decision not to object to the trial court's answer to the jury's question regarding intent. Well, he wasn't there. That's not clear. Your Honor. I'm sorry. Do you read the record to show that he was there or was not there? Your Honor, my understanding of this case is that that issue has not been certified for appeal. If the Court would like to certify that issue for appeal, I would be happy to investigate it completely and respond to it fully in a brief. Well, you've read the record, haven't you? Your Honor, as I stand here today, I'm not ready to deal with an uncertified issue. I'm only prepared to deal with the certified issue. So when you were reading the record, you couldn't tell one way or another whether the lawyer was there or was not there? Just from reading the transcripts? In our briefs, I've commented on it briefly in a footnote. It appears to me, when you look at both the reporter's transcript and the clerk's transcript, that he was present. But other than taking a look at those pages, I haven't been able to do any kind of investigation. Certainly, we don't have a declaration from trial counsel stating that he wasn't there or any declaration at all from him stating what his trial strategy might have been that day. So to speculate that he wasn't there and to hope to get relief on that speculation, I think, is inappropriate at this juncture. Okay. Now, it would have been futile to object because the court had already exercised its discretion under California Penal Code Section 1138. This section requires the judge to consider the jury's questions about points of law. It requires the judge to clarify points of law if it deems that to be necessary. However, if the instructions are full and complete in themselves, then the trial court has no duty to provide any further explanation. In fact, under California law, the judge needs to be aware that any deviation from the standard instructions might create error. And so he has to be careful when he decides whether or not to give a further definition. Well, but, you know, the CalJIT instructions are not mandatory is the way I understand it. They're not mandatory, perhaps, but they are the standard instructions that are used commonly in almost every trial in California. That's because it's easier for everybody just to use them. Well, and also California law allows for the defendant to ask for pinpoint instructions or augmentations prior to the jury going to deliberations. We don't have any of those. Are those still being used in every courtroom in California, by the way, CalJIT? The Judicial Council has a competing set now. There are now the CalCRIM instructions. And we're sort of in a state where some courts are still using the old instructions, some courts are using the new instructions. I believe they're encouraged to use the new instructions. This case is prior to the CalCRIM instructions. So counsel would have recognized that the trial court had this mandatory duty to exercise his discretion about points of law and would have realized the court already did that and to object would be futile. Also, there really appeared to be no reasonable basis to object. As I think the ‑‑ as your honors have pointed out, the trial court didn't tell the jury to disregard the instructions, to focus on any one particular instruction or to disregard any instruction. California does not require any further definition of intent to kill. And, in fact, at that time there was a case that said specific intent to kill and intent to kill were phrases that were readily understandable. Now, even if counsel had believed that an objection was not futile, he may have had a sound reasonable trial strategy for abstaining from rendering an objection. Prior to this question by the jury, the jury had also asked two other questions. The first question was whether the defendant had already been convicted of robbery and burglary. And the court expressed some dismay because he had told them repeatedly that that was the case. The next question was whether the jury was allowed to know what punishment the defendant would receive if he were convicted. Then the jury asked a question about intent to kill. Under these circumstances, trial counsel may have simply assessed that the state of deliberations appeared favorable to his client. You have a jury that's worried about the penalty, has forgotten what's been told, and seems to be having some trouble making a unanimous situation. For a defense counsel, that sometimes is a favorable position to be in, and to leave well enough alone is a good trial strategy. Moving on to the second prong of Strickland. Assuming counsel had objected, as we've argued before, the objection would have been overruled. However, let's assume that counsel had asked the court to re-read the instructions, and the court had done so. The court had already received these instructions. You could have just asked the judge to, I've already instructed you on intent, and consider all the instructions together. I think the judge could have said something like that. I don't think any of the court's comments caused the jury to think that they should disregard the instructions. He was merely telling them that the term intent to kill had no further definition, that they had to use their understanding of what those words meant. In light of all the instructions that had been given, correct? There is a specific instruction that tells the jury to consider all the instructions in light of one another. Did you check to determine whether any minute entries had been made as to whether the judge contacted counsel? I went through the record that we had on appeal. And honestly, I don't recall offhand what exactly I said in the footnote. I prepared for the certified issues today. As I said, if the court wants to certify that issue, I'm available. I'm talking about the certified issue. Okay. Whether Judge Liu actually made a contact with counsel. Is there any record one way or the other? Did you check? Yes, I did. My understanding, my belief, you know, having not been there and not knowing 100 percent, my belief is that counsel was there at each juncture. You gather that from reading the record? Yes, Your Honor, from the reporter's transcript and from the clerk's transcript. Did you file a supplemental extract for us? Or do we have to go back and get the whole record? We have some of them. Do we have the whole record? Okay. Anything related to that issue should be included in the record on appeal that's been or, I'm sorry, the redacted record submitted to this Court. And what the reporter's transcript says is regarding whether he was present. It says appearances as heretofore noted. That's how the reporter put it. So. So assuming that counsel was there and that counsel had asked the jury or had asked the trial court, excuse me, to reread the instructions, it would have made no difference. Now, I did notice in the reply brief that the issue heretofore has been that the trial court's comments caused the jury to disregard the other jury instructions. And for the first time in the reply brief, appellant offers a further definition he claims should have been given to the jury on that day. And I will quote that. It is, for a result to be caused intentionally, the actor must either desire the result or know to a substantial certainty that the result will occur. While I don't think the court should consider this definition because it hasn't been offered in the state court and it was only offered in the reply brief, even if the court had given this further instruction, it would have benefited the prosecution in this case. If the jury was having trouble with anything, it was that this defendant probably truthfully claimed that he did not want to murder anybody that day when he woke up. He wanted to burglarize a home, sell the items he stole, and get more drugs. However, when we confronted by the victim in this case, he made the clear choice to wrap a telephone cord around her neck and strangle her. That's what he told one of the doctors later on. And then after he did that, he picked up a very heavy candle holder and he struck her in the head and face several times. He crushed her skull. Now, under this definition, the jury would understand that the appellant did not need to desire to kill this woman. He needed only to know to a substantial certainty that his actions would cause her death. And I don't think anyone can reasonably deny that strangulation and repeated bludgeoning with a heavy object to the head would not cause death. I see my time is running out. For the same reasons, the appellant cannot establish cause and prejudice and overcome the procedural bar, which prohibits his claim of trial court error. Thank you very much, Your Honor. All right. The Attorney General complains that there's no declaration from trial counsel here and then gives some hypotheses on what counsel might have been thinking. And I just want to emphasize that what we have here is a case where, although Mr. Trotter requested counsel several times in the court below, he never got counsel. He's an incarcerated pro se petitioner serving a sentence of life without parole. And I think it's not right to blame him if there's no declaration from trial counsel. I would say that if the court is hesitant to grant relief as we speak on this record, I certainly think a remand to the evidentiary hearing for further factual development on the issue of whether counsel was actually present or absent when the jury came back with the question about intent to kill is appropriate. Okay. Thank you very much. Thank you. We appreciate your arguments. And this case is submitted. The calendar lists another case, Short v. Roe, but that's been removed from our argument calendar or from the calendar completely. Our next case for argument is Copeland v. Ryder Services Corporation.
judges: Beezer, Fernandez, Paez